UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DONISE ROGERS** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 13-5695** |
| | * | |
| **SOUTHERN FIDELITY INSURANCE CO., ET AL.** | * | **SECTION "L" (5)** |

## ORDER & REASONS

Before the Court is a Motion for Summary Judgment, filed by Defendant Southern Fidelity Insurance Company ("SFIC"). (Rec. Doc. 42). The Court has reviewed the briefs and applicable law and now issues this Order and Reasons.

### I.  BACKGROUND

This case arises out of damage that occurred to Plaintiff's property in La Place, Louisiana as a result of Hurricane Isaac. (Rec. Doc. 1 at 2). According to the Plaintiff, Defendant SFIC provided windstorm coverage for the property and Defendant Allstate Insurance Company provided flood coverage through the National Flood Insurance Program. (Rec. Doc. 1 at 1-2). With respect to the windstorm damage and insurance coverage, the following facts are not in dispute:

Hurricane Isaac made landfall on August 28, 2012. (Rec. Doc. 42-2 at 1). On September 1, 2012, Plaintiff filed a notice of loss with SFIC regarding damage to her home caused by Hurricane Isaac. (Rec. Doc. 42-2 at 1). On September 3, 2012, Jean Ludwin-Barger of United Storm Adjusters, Inc. inspected Plaintiff's claim for wind damage. (Rec. Doc. 42-2 at 2). Barger inspected the property again on September 18, 2012. (Rec. Doc. 42-2 at 2). The purpose of the second inspection was to allow Barger an opportunity to meet with Plaintiff's contractor, inspect the roof, verify debris removal, and agree on the scope of repairs. (Rec. Doc. 42-2 at 2). On

1

September 24, 2012, Barger inspected the property a third time in order to verify the work that was in progress and to finish assessing damages. (Rec. Doc. 42-2 at 2).

On September 19, 2012, following the USAI initial inspection, SFIC issued a check to Plaintiff for $5,000.00, which was an advance on Plaintiff's Coverage A (dwelling) claim. (Rec. Doc. 42-2 at 2). On October 8, 2012, based on Barger's estimate, SFIC issued payment to Plaintiff in the amount of $58,856.34. (Rec. Doc. 42-2 at 2). This number represented a payment for Coverage A (dwelling) and Coverage B (other structures) damages in the amount of $71,699.80 less $5,000.98 in non-recoverable depreciation, the $5,000 advance, and the hurricane deductible of $3,226.00. (Rec. Doc. 42-2 at 2). On November 28, 2012, SFIC issued a check to Plaintiff in the amount of $14,400.00 under Coverage D (loss of use) for alternative living expenses. (Rec. Doc. 42-2 at 2). On November 28, 2012, SFIC issued a check to Plaintiff in the amount of $8,000.00 as an advance for her personal property damage under Coverage C. (Rec. Doc. 42-2 at 2-3). On January 14, 2013, SFIC issued a check in the amount of $45,000.000 to Plaintiff for Coverage C (contents) damages. (Rec. Doc. 42-2 at 3). To date, the total received by the Plaintiff from SFIC for Coverage A, B, C, and D, less deductibles, is $91,256.00.

Plaintiff, through counsel, hired Michaelson & Messinger Insurance Specialists LLC ("M&M") to conduct an inspection of the premises and report their assessment of the damages. On December 3, 2012, M&M sent its building assignment and Public Adjusters License to SFIC. On December 10, 2012, SFIC sent a letter to Plaintiff and M&M acknowledging that SFIC received M&M's letter of representation and requesting Plaintiff and/or M&M to provide a list of information and proof of Plaintiff's damages. (Rec. Doc. 42-21 at 2). On January 3, 2013, M&M sent its estimate of damages to SFIC. (Rec. Doc. 42-2 at 3). M&M's estimate for wind-

related damages totaled $324,179.45.  (Rec. Doc. 42-2 at 3).[1]  On January 14, 2013, SFIC sent a letter to M&M stating that SFIC had received M&M's estimate and was unable to accept the estimate of damages at that time.  (Rec. Doc. 42-23 at 1).  SFIC asked for an extensive list of additional information, which it claimed was necessary in order to properly evaluate Plaintiff's estimate.  (Rec. Doc. 42-23 at 1).  SFIC's redacted claim notes indicate that on March 22, 2013, M&M called SFIC to inquire about the status of Plaintiff's claim.  (Rec. Doc. 42-24 at 2).  SFIC advised M&M that they still had not received the requested information.  (Rec. Doc. 42-24 at 2).  On April 5, 2013, SFIC addressed a letter to Plaintiff and cc'd M&M.  (Rec. Doc. 42-26 at 1).  This letter stated that SFIC still had not received the information that they requested from Plaintiff.  (Rec. Doc. 42-26 at 1).  Plaintiff testified that she does not recall receiving letters from SFIC requesting additional information.  Plaintiff explains that she was not living at the property at the time that SFIC claims to have sent these letters.  (Rec. Docs. 52 at 56; 42-30 at 3-4).

On August 29, 2013, Plaintiff filed the present lawsuit.  Plaintiff claims that SFIC improperly adjusted her claims.  (Rec. Doc. 1 at 9).  She is seeking declaratory relief as well as damages arising from SFIC's alleged breach of contract, as well as penalties arising from SFIC's breach of its duty of good faith and fair dealing.

SFIC filed an answer in which it denies all allegations and asserts various affirmative defenses.  Among other things, SFIC claims that it has not been provided satisfactory proof of loss by the Plaintiff.  SFIC also claims application of certain policy exclusions.

---

[1] In Defendant's Statement of Uncontested Material Facts (Rec. Doc. 42-2) Defendant states that M&M sent its estimate on January 3, 2014.  Plaintiff responds that she "does not dispute that M&M sent an estimate to SFIC on or about January 3, 2014 . . . ."  (Rec. Doc. 52 at 55).  The Court finds that both of these were typographical errors because the M&M letter is actually dated January 3, *2013*.  (Rec. Doc. 42-22).

**II.     PRESENT MOTION**

SFIC asks the Court to grant summary judgment as to Plaintiff's claims for statutory penalties, pursuant to Louisiana Revised Statute §§ 22: 1892 and 22:1973.  SFIC argues that the record clearly shows that SFIC acted in good faith during the adjustment of Plaintiff's claim. (Rec. Doc. 42-1 at 1).  SFIC emphasizes that three inspections of the property took place by Barger within thirty days of Hurricane Isaac's landfall.  (Rec. Doc. 42-1 at 2-3).  SFIC claims that it sent Plaintiff checks for the undisputed amounts of her claims and sent her advance payments for portions of her claims.  (Rec. Doc. 42-1 at 10).  SFIC claims that it asked Plaintiff and M&M to send additional information to support Plaintiff's claims for damages and that SFIC never received such information.  (Rec. Doc. 42-1 at 6).  SFIC argues that there was a reasonable and legitimate question as to the extent of Plaintiff's damages and that such a dispute precludes a finding that SFIC was "arbitrary, capricious, or without probable cause."  (Rec. Doc. 42-1 at 9-12).

SFIC further argues that Plaintiff's bad faith claims must be dismissed because she materially breached her post-loss duties as set out in the insurance policy.  (Rec. Doc. 42-1 at 13).  SFIC claims that courts have previously dismissed bad faith claims where an insured fails to provide documentation that is requested by the insurer.  (Rec. Doc. 42-1 at 14).  SFIC claims that the insurance policy required Plaintiff to provide records and documents to SFIC at the request of SFIC.  (Rec. Doc. 42-1 at 15).  SFIC claims that Plaintiff failed to provide requested information and that this failure prejudiced SFIC in its investigation.  (Rec. Doc. 42-1 at 15). For this reason, SFIC argues that Plaintiff's bad faith claims should be dismissed.

In opposition, Plaintiff argues that SFIC misinterprets Louisiana's bad faith law. According to Plaintiff, Louisiana law imposes a broad duty on insurers to "adjust claims fairly

and promptly and to make a reasonable effort to settle claims with the insured." (Rec. Doc. 52 at 2). Plaintiff claims that when Barger conducted three initial inspections she made many errors and omissions. (Rec. Doc. 52 at 3). Plaintiff claims that Barger repeatedly assured her that the damage to her home was going to result in a "total loss." (Rec. Doc. 52 at 52). However, Barger's estimate reflected damages much lower than a total loss. (Rec. Doc. 52 at 3). Plaintiff claims that she attempted to contact Barger and SFIC on multiple occasions to discuss the status of her claim but experienced no success. (Rec. Doc. 52 at 3). According to Plaintiff, at this point she hired M&M, which provided an estimate and repair details to SFIC. Plaintiff emphasizes the fact that SFIC did not re-inspect her home after it received, and rejected, M&M's estimate. (Rec. Doc. 52 at 4). Plaintiff also points out that the amount she received from SFIC was less that 20% of the estimate that she submitted to them. (Rec. Doc. 52 at 4). Plaintiff claims that she has provided enough evidence to support all three factors required by La. R.S. § 22:1973 and § 22:1892. Specifically, Plaintiff claims that 1) SFIC failed to compensate her for her losses, 2) SFIC's failure was a result of its arbitrary and capricious adjustment of her losses, and 3) Plaintiff provided satisfactory proof of loss to SFIC. (Rec. Doc. 52 at 5).

    Plaintiff also argues that she fulfilled her duties under the insurance policy by providing SFIC with M&M's estimate, which provided a detailed description of the damage to Plaintiff's home as well as written documentation and photographs. (Rec. Doc. 52 at 11). Further, Plaintiff argues that her duty to provide the insurer "proof of loss" does not require her to provide each and every document that SFIC requested. (Rec. Doc. 52 at 11). Plaintiff claims that Barger's inspection and report as well as M&M's estimate provided SFIC with satisfactory proof of loss. (Rec. Doc. 52 at 12).

**III.     LAW & ANALYSIS**

    **A.     Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

    **B.     Louisiana Revised Statute Title 22 Sections 1892 and 1973**

Louisiana Revised Statute Title 22 Section 1892 is entitled "Payment and adjustment of claims, policies other than life and health and accident; personal vehicle damage claims; extension of time to respond to claims during emergency or disaster; penalties; arson-related claim suspension." La. Rev. Stat. § 22:1892 provides, in relevant part:

> All insurers issuing any type of contract . . . shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest . . . .
>
> . . . *Failure to make such payment within thirty days after receipt of such satisfactory written proofs* and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim . . . *when such failure is found to be arbitrary, capricious, or without probable cause, shall*

> *subject the insurer to a penalty, in addition to the amount of the loss . . . .*

La. Rev. Stat. § 22:1892 (emphasis added). Louisiana Revised Statute Title 22 Section 1973 is entitled "Good faith duty; claims settlement practices; causes of action; penalties." It provides, in relevant part:

> . . . An insurer . . . owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
>
> . . . Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A of this Section: . . .
>
> (5) *Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause*.

La. Rev. Stat. § 22:1973 (emphasis added). The Fifth Circuit has explained that "[t]he conduct prohibited by the two sections is 'virtually identical:' 'the failure to timely pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious, or without probable cause.'" *Korbel v. Lexington Ins. Co.*, 308 F. App'x 800, 803 (5th Cir. 2009) (quoting *Reed v. State Farm Mut. Auto. Ins. Co.*, 2003-0107 (La. 10/21/03); 857 So. 2d 1012, 1020).

In order to successfully claim penalties and attorney fees under these statutes, "[a] plaintiff has the burden of proving that his insurer (1) received satisfactory proof of loss, (2) failed to pay within the required time, and (3) acted in an arbitrary and capricious manner." *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 297 (5th Cir. 2009). "The sanctions of penalties and attorney fees are not assessed unless a plaintiff's proof is clear that the insurer was in fact

7

arbitrary, capricious, or without probable cause in refusing to pay." *Reed*, 857 So. 2d at 1021 (citing *Block v. St. Paul Fire & Marine Ins. Co.*, 32, 306 (La. App. 2 Cir. 9/22/99); 742 So. 2d 746, 751). The Louisiana Supreme Court has explained that "arbitrary, capricious or without probable cause" means vexatious and unjustified. *See La. Bag Co., Inc. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/08); 999 So. 2d 1104, 1114. The plaintiff must show that the insurer willfully refused to pay and this refusal was not based on a good-faith defense. *Id.* (citing *Reed*, 857 So. 2d at 1021). If there is a reasonable and legitimate dispute regarding the extent of the insurance claim, the court should not infer bad faith from an insurer's failure to pay within the time limits provided by statute. *See Reed*, 857 So. 2d at 1021; *see also Block*, 742 So. 2d at 752 ("the statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and was acting in good-faith reliance on that defense . . . where there is a reasonable and legitimate question as to the extent and causation of a claim; bad faith should not be inferred from an insurer's failure to pay within the statutory time limits . . ."). The statutory penalties should only be imposed "in those instances in which the facts negate probable cause for non-payment." *McDill v. Utica Mut. Ins. Co.*, 475 So. 2d 1085, 1092 (La. 1985).

Whether the insurer acted arbitrarily, capriciously, or without probable cause depends on the facts and circumstances of the case and what the insurer knew at the time of its actions. This is generally a factual issue. *See id.*; *see also Louisiana Bag Co., Inc. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/08); 999 So. 2d 1104, 1120 ("whether an insurer's action was arbitrary, capricious or without probable cause is essentially a fact issue . . . "). However, where, as here, the nonmoving party will bear the burden of proof at trial, it is incumbent upon that party to set out specific facts showing that a genuine issue exists in order to defeat a summary judgment motion. *See Gates v. Auto Club Family Ins. Co.*, No. 06-4394; 2007 WL 1464259, at *4 (E.D.

La. May 17, 2007) (citing *Celotex*, 477 U.S. at 324-25).  Here, Plaintiff has not provided any facts indicating that SFIC acted arbitrarily, capriciously, or without probable cause.  Therefore, Plaintiff will be unable to prove that she is entitled to penalties under La. Rev. Stat. §§ 22:1892 or 22:1973.

Assuming that the estimate, which M&M sent to SFIC on January 3, 2013, constitutes satisfactory proof of loss, the Plaintiff has failed to put forth any facts indicating that SFIC's failure to pay additional money after receipt of this estimate was arbitrary, capricious, or without probable cause.  SFIC conducted 3 inspections of the property, paid an advance to the Plaintiff, and paid the undisputed amounts as determined by the inspection.  When SFIC received the estimate from M&M, it took issue with it.  SFIC submitted a letter, which it sent to M&M on January 14, 2013 – 11 days after receiving the wind-storm estimate from M&M.  The letter states that SFIC is "unable to accept your estimated amount of damages at this time." (Rec. Doc. 42-23 at 1).  The letter goes on to request additional information that SFIC claims is necessary to properly evaluate the supplemental estimate.  (Rec. Doc. 42-23 at 1).  SFIC's requests are extremely detailed.  For instance, SFIC asks for "[a]n explanation as to why you included replacement of 35.80 squares of roofing felt, after this was already included in your shingle replacement," "[c]olor photos showing damage[] which would warrant the tear out and replacement of the subfloor and spraying of the floor joists in bedroom 1, Hallway, and bedroom 3," and  "[a]n explanation as to why overhead was calculated at 15%."  (Rec. Doc. 42-23 at 1-2).  The list goes on to provide 25 similarly detailed requests.  Whether or not the Plaintiff had a duty to respond to these requests, the substance of the requests themselves conclusively demonstrates that there existed a legitimate dispute over the extent of Plaintiff's wind-storm damages.  SFIC did not just send Plaintiff a blanket rejection.  Instead, it went through the estimate in detail and

took issue with certain very specific elements of that estimate. As the courts have explicitly repeated, "an insurer need not tender payments for amounts that are reasonably in dispute." *See Harvey Canal Ltd. P'ship v. Lafayette Ins. Co.*, 09-605 (La. App. 5 Cir. 3/9/10); 39 So. 3d 619, 631. The penalty statutes are "not intended . . . to prevent insurers from disputing claims in good faith . . . ." *Dickerson*, 556 F.3d 290, 299; *see also La. Bag.*, 999 So. 2d at 1120 ("An insured has a recognized right to withhold payment of disputed amounts in a claim for which there are substantial, reasonable and legitimate questions as to the extent of its insurer's liability or of the insured's loss.") The Court finds that SFIC was not arbitrary and capricious when it disputed specific portions of the estimate that M&M provided.

Furthermore, after disputing the estimate and asking for additional information, SFIC received no information from the Plaintiff or from M&M. The Plaintiff points to nothing in the record indicating that anyone ever responded to SFIC's request, even if just to put SFIC on notice that the Plaintiff refused to provide this information. Once again, the Court takes no position on whether the Plaintiff had a duty to provide the additional information. However, the Court finds that SFIC's unanswered requests justified SFIC's failure to pay the Plaintiff the additional amount that she requested within 30 or 60 days. The evidence indicates that SFIC was waiting to receive a response from the Plaintiff. *Cf. Korbel*, 308 Fed. Appx. At 804 ("viewed in the light most favorable to [plaintiff], the summary judgment evidence does not support the conclusion that Lexington was waiting on [plaintiff] to provide these estimates).

The Plaintiff contends that "Louisiana law broadly requires insurers 'to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured." (Rec. Doc. 52 at 2) (citing La. Rev. Stat. § 22:1973(A)). The Court finds that this is exactly what SFIC did. Within days of receiving Plaintiff's notice of loss, SFIC sent an adjuster to inspect

Plaintiff's property for wind damage. The adjuster inspected the property on three separate occasions, taking pictures and detailed notes of the damage that she observed. After the adjuster submitted an estimate, SFIC promptly paid the Plaintiff the amount of that estimate. (Rec. Doc. 42-13 at 1). SFIC also paid the Plaintiff for her alternative living expenses and contents damages promptly after receiving proof of these losses. (Rec. Docs. 42-25 at 6; 42-15 at 1; 42-18 at 1). In fact, SFIC has paid Plaintiff the policy limits under Coverage C (contents). (Rec. Doc. 42-18 at 1). After all of the inspections and various payments by SFIC to the Plaintiff, SFIC received an estimate from M&M, which claimed significantly higher damages than SFIC's adjuster estimated. SFIC responded by seeking additional information about various portions of this estimate. The Court finds, and the Plaintiff points to no facts to the contrary, that SFIC acted in good faith throughout the adjustment of the Plaintiffs claim. All of the evidence indicates that there was a legitimate dispute regarding the amount of the Plaintiff's damages. SFIC cannot, therefore, be penalized under La. Rev. Stat. §§ 22:1892 and 22:1973.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that SFIC's Motion for Summary Judgment as to Plaintiff's claims for statutory penalties (Rec. Doc. 42) is hereby **GRANTED**.


New Orleans, Louisiana, this 11th day of July, 2014.

_____
UNITED STATES DISTRICT COURT JUDGE