UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DONISE ROGERS** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 13-5695** |
| | * | |
| **SOUTHERN FIDELITY INSURANCE CO., ET AL.** | * | **SECTION "L" (5)** |

## ORDER & REASONS

Before the Court is a Motion for Summary Judgment, filed by Defendant Allstate Insurance Company ("Allstate"). (Rec. Doc. 34). The Court has reviewed the briefs and applicable law and now issues this Order and Reasons. Because the Court finds that Plaintiff Donise Rogers did not comply with the provisions of the Standard Flood Insurance Policy ("SFIP"), Allstate's motion is granted.

**I.     BACKGROUND**

This case arises out of damage to Plaintiff Rogers's property in La Place, Louisiana, which was allegedly caused by Hurricane Isaac. (Rec. Doc. 1 at 2). According to Rogers, Allstate provided flood coverage through the National Flood Insurance Program and Defendant Southern Fidelity Insurance Company provided windstorm coverage for the property in question. (Rec. Doc. 1 at 1-2). Rogers claims that days after Hurricane Isaac made landfall, she registered claims, and supplied appropriate proof of loss, with Southern Fidelity for the windstorm losses and with Allstate for the flood loss. (Rec. Doc. 1 at 3, 9). Rogers claims that both Defendants have improperly adjusted her claims. (Rec. Doc. 1 at 9). She is seeking declaratory relief as well as damages arising from Defendants' alleged breach of contract, and penalties arising from Southern Fidelity's breach of duty of good faith and fair dealing.

With respect to the flood damage, the following facts are not in dispute: Allstate

1

issued a Standard Flood Insurance Policy ("SFIP") to Rogers for the property in question with Coverage A (building) policy limits of $169,400.00 and Coverage B (contents) policy limits of $26,300.00.  (Rec. Doc. 34-1 at 1).  On March 19, 2013, FEMA issued a WYO Bulletin authorizing extension to SFIP policyholders for a total of 240 days from the date of loss to submit a signed and sworn proof of loss to the WYO carrier for Hurricane Isaac flood loss claims.  (Rec. Doc. 34-1 at 3).  On August 31, 2012, days after Hurricane Isaac made landfall, Rogers submitted a claim to Allstate for damages.  (Rec. Doc. 34-1 at 2).

On September 23, 2012, Allstate sent out an adjuster to inspect the property.  (Rec. Doc. 35-2 at 1).  This adjuster prepared an estimate on October 12, 2012, which stated that the actual cash value of Rogers's damages to be $50,709.69.  (Rec. Doc. 35-2).  Subsequently, Rogers hired Michaelson & Messinger Insurance Specialists, LCC ("M&M") to represent her. *See* (Rec. Doc. 35-3).  M&M hired its own independent adjuster, Dan Onofrey, and provided a copy of his estimate to Allstate on January 3, 2013.  (Rec. Doc. 35-5).  The estimate was attached to a letter from M&M to Allstate which stated "[e]nclosed please find our estimate of damages to the structure for the above captioned loss.  Please set up a supplemental claim." (Rec. Doc. 35-5 at 1).  According to Mr. Onofrey's estimate, the replacement cost value of Rogers's flood damage equaled $368,041.27.  (Rec. Doc. 35-5 at 15).  Despite this estimate from her independent adjuster, on January 21, 2013, Rogers signed a proof of loss which stated that the "NET AMOUNT CLAIMED under above numbered policy" is $49,709.68.  (Rec. Doc. 34-6).  She also included a Building Replacement Cost Proof of Loss in the amount of $4,831.22.  Therefore, her total proof of loss equaled $54,540.90.  (Rec. Doc. 34-6).  On February 20, 2013, Allstate issued a check to Rogers in the amount of $51,540.90, which stated that this amount was for "Flood Claim Payment for Building Loss."  (Rec. Doc. 34-8 at 1).  This amount equaled the

total claimed loss less the $3,000 advance. Thereafter, Allstate sent out a second adjuster, Jason Pope, who prepared a second estimate on April 7, 2013. (Rec. Doc. 35-6). According to Pope's estimate, the actual cash value of Rogers's damage was $97,220.28. (Rec. Doc. 35-6 at 26). On April 24, 2013, Rogers signed and submitted a second proof of loss which stated that the "NET AMOUNT CLAIMED under above numbered policy" was $41,679.37. (Rec. Doc. 34-9 at 1). On April 29, 2013, Allstate issued a check to Rogers in the amount of $41,679.37, which stated that this amount was for "Flood Claim Payment for Building Loss." (Rec. Doc. 34-10 at 2). On August 8, 2013, Allstate apparently reissued this same check. (Rec. Doc. 34-10 at 1).

## II.   PRESENT MOTION

Allstate filed the present Motion for Summary Judgment. (Rec. Doc. 34). According to Allstate, the SFIP required Rogers to submit a timely, signed and sworn proof of loss as a prerequisite to recovery of policy benefits. (Rec. Doc. 34 at 1). Allstate argues that the proof of loss requirement must be construed strictly and that failure to comply with the proof of loss requirement bars recovery pursuant to an SFIP. (Rec. Doc. 34 at 2). Allstate claims that Rogers submitted an adequate proof of loss for $49,709.68 plus a building replacement cost of $4,831.22 and a second adequate proof of loss for $41,679.37. (Rec. Doc. 34-2 at 4). Allstate claims that it has issued multiple checks to Rogers, totaling $122,520.27 in payments for her property damage. (Rec. Doc. 34-2 at 4-5). According to Allstate, the amount that they have paid Rogers exceeds the proof of loss that she submitted and they owe nothing more. (Rec. Doc. 34-2 at 6). Allstate argues that Rogers has failed to submit a timely, signed and sworn proof of loss to support the amounts sought in this litigation and that recovery for such amounts should be barred. (Rec. Doc. 34-2 at 12).

Allstate also argues that Rogers failed to comply with Article VII(R) of the SFIP

which establishes certain conditions precedent to bringing a lawsuit. (Rec. Doc. 34-2 at 12-13). Specifically, Allstate claims that "a sworn proof of loss is 'a condition precedent' to bringing suit," according to the SFIP. Allstate reiterates its claim that Rogers failed to submit an adequate proof of loss for the amount she now seeks and, therefore, Allstate asks the Court to dismiss her claims. (Rec. Doc. 34-2 at 14).

In opposition, Rogers claims that she did submit an adequate proof of loss form "containing information about the damage based on the independent adjuster's estimate, plus a detailed estimate of additional damage that the independent adjuster missed." (Rec. Doc. 35 at 1). Rogers points out that on January 3, 2013, M&M provided Allstate with a copy of its independent estimate of damages to Rogers's home, in the amount of $368,041.27. (Rec. Doc. 35 at 3). According to Rogers, this estimate was based on the inspection of Mr. Daniel Onofrey, a Louisiana licensed contractor. (Rec. Doc. 35 at 2). Rogers claims that this estimate included a comprehensive, itemized analysis of the necessary repairs. (Rec. Doc. 35 at 3). This estimate, according to Rogers, was submitted in addition to the two proof of loss forms that she submitted on January 21, 2013 and April 24, 2013. (Rec. Doc. 35 at 3).

According to Rogers, a proof of loss is adequate if it, along with other information provided to the insurer, gives sufficient information to enable the insurer to meaningfully evaluate the merits of the insurance claim. (Rec. Doc. 35 at 5). Rogers argues that an adequate "proof of loss" does not refer to a single form, but instead refers to the entire record before the insurer. (Rec. Doc. 35 at 6). Rogers claims that this Court has, on numerous occasions, considered the entirety of the information before the insurance company in evaluating the adequacy of the plaintiff's proof of loss. (Rec. Doc. 35 at 6) (citing *Copeland v. Allstate*, No. Civ. A. 03-2704, 2004 WL 325577 (E.D. La. Fe. 18, 2004)). Rogers states that "[i]n specifically

dealing with claims relating to Hurricane Isaac, the Eastern District has made clear that the proof of loss requirement requires plaintiffs to submit adequate information, not a formal proof of loss for the exact amount claimed." (Rec. Doc. 35 at 7). Rogers argues that, consistent with these cases, she met the proof of loss requirement when she submitted two proof of loss forms and supplemented those forms with an extensive, itemized estimate of her losses. (Rec. Doc. 35 at 8). Therefore, she asks this Court to deny summary judgment.

Allstate filed a reply in which it argues that, contrary to Rogers' claim, substantial compliance with the proof of loss requirement is not sufficient. (Rec. Doc. 41 at 1). Allstate claims that the United States Court of Appeals for the Fifth Circuit has ruled on this issue ten times and has held that "all aspects of the SFIP's requirements must be strictly construed." (Rec. Doc. 41 at 2). Allstate argues that an adequate Proof of Loss must be signed and sworn by the insured and that Rogers' public adjuster estimate does not satisfy this requirement. (Rec. Doc. 41 at 4). Allstate further argues that all of the cases from this Court that Rogers cites are either inapplicable or have since been overruled.

### III.  LAW & ANALYSIS

#### A.  Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.*

When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

### B.     The SFIP and Proof of Loss Requirement

In 1968, Congress created the National Flood Insurance Program ("NFIP") to provide flood insurance coverage at or below actuarial rates because private insurance companies could not economically underwrite these policies. *See Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998). The program is operated by the Federal Emergency Management Agency ("FEMA") and is supported by the federal treasury. *Id.* Flood insurance policies can be issued by FEMA or through private insurers known as "Write Your Own" companies who serve as fiscal agents of the United States. *Id.* FEMA provides fixed terms and conditions that must be used in the federal flood insurance policies, known as the Standard Flood Insurance Policy ("SFIP"). *Id.* "The provisions of an insurance policy issued pursuant to a federal program must be strictly construed and enforced." *Id.* at 954; *see also Marseilles Homeowners Condominium Ass'n Inc. v. Fidelity Nat. Ins. Co.*, 542 F.3d 1053, 1057-58 ("Under FEMA regulations, strict adherence is required to all terms of the SFIP.") (quoting *Forman v. Fed. Emergency Mgmt. Agency*, 138 F.3d 543, 545 (5th Cir. 1998)).

Disputes regarding provisions of the SFIP should be "resolved under federal law 'by drawing upon standard insurance law principles.'" *Hanover Bldg. Materials, Inc. v. Guiffrida*, 748 F.2d 1011, 1013 (5th Cir. 1984) (quoting *West v. Harris*, 573 F.2d 873, 880-81 (5th Cir. 1978)); *see also Studio Frames Ltd. v. Standard Fire Ins. Co.*, 483 F.3d 239, 244-45 (4th Cir. 2007) (explaining that federal common law governs the interpretation of federal flood insurance policies and that "[u]nder federal common law, the federal courts draw upon standard principles

of insurance law to resolve disputes over coverage in an SFIP."); *Suopys v. Omaha Prop. & Cas*, 404 F.3d 805, 809 (3d Cir. 2005) (explaining that federal courts "apply standard insurance principles to construe the SFIP").

Turning now to the relevant portion of the SFIP, Article VII(J)(4) provides:

> 4. Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:
>
> a. The date of the time of loss;
> b. A brief explanation of how the loss happened;
> c. Your interest (for example, "owner") and the interest, if any, of others in damaged property;
> d. Details of any other insurance that may cover the loss;
> e. Changes in title or occupancy of the covered property during the term of the policy;
> f. Specifications of damaged buildings and detailed repair estimates;
> g. Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
> h. Details about who occupied any insured building at the time of loss and for what purpose; and
> i. The inventory of damaged personal property described in J.3. above.
>
> 5. In completing the proof of loss, you must use your own judgment concerning the amount of loss and justify that amount.

44 C.F.R. pt. 61, app. A(1), art. VII(J). The SFIP further provides that the insured "may not sue [the insurer] to recover money under this policy unless [the insured has] complied with all the requirements of the policy." *Id.* art. VII(R).

The Fifth Circuit has repeatedly warned that the proof of loss requirement, as with all provisions of the SFIP, should be strictly enforced. *See Wright v. Allstate Ins. Co.*, 415 F.3d 384, 387 (5th Cir. 2005). Failure to submit a timely, signed and sworn proof of loss, with all of the required elements, is a valid basis for denying an insured's claim. *Id.* The law in this circuit,

requiring strict compliance with the proof of loss requirement, developed in the context of cases that involved insureds who either did not submit proofs of loss at all, did not submit them within the required time, or submitted incomplete forms. *See, e.g.*, *Richardson v. American Bankers Ins. Co. of Fla.*, 279 Fed. Appx. 295, 298 (5th Cir. 2008) (holding that lawsuit was precluded as a matter of law because the insured did not submit a signed and sworn proof of loss); *Marseilles*, 542 F.3d at 1055-56 (finding that insured's failure to submit a proof of loss precluded suit despite the fact that insured may have provided adequate claim information to allow insurer to adjust claim); *Forman v. Federal Emergency Management Agency*, 138 F.3d 543, 545 (5th Cir. 1998) (holding that where the insured wrote "THESE FIGURES ARE UNACCEPTABLE" next to the listed amounts on the proof of loss form, the form was inadequate to meet the proof of loss requirement).

The present case, however, presents a different fact pattern.  Here, the Plaintiff timely submitted two adequate proof of loss forms that were signed and sworn and met all of the requirements provided in the SFIP.  (Rec. Docs. 34-6; 34-9).  Plaintiff is now seeking to recover, through this lawsuit, an amount of damages that is larger than what she listed on her signed and sworn proofs of loss.  As this Court has previously pointed out, the Fifth Circuit has not directly addressed this issue. *See Bechtel v. Lighthouse Property Ins. Co.*, No. 13-5289, 2014 WL 1389631, *3 (E.D. La. April 1, 2014) (noting that the court has found "no Fifth Circuit opinion directly addressing the SFIP proof of loss requirement in the same fact pattern present here (*i.e.*, where a sworn proof of claim has been timely submitted for undisputed amounts but not for disputed supplemental amounts sought)); *Downey v. Federal Emergency Management Admin.*, No. 13-5744, 2014 WL 248126, at *3 (E.D. La. Jan. 22, 2014) (finding that "[n]o controlling decision has considered the specific argument that [plaintiff] makes to this Court" where the

plaintiff submitted two proofs of loss, both of which were paid in full by FEMA, but then sought additional compensation for the claims on those proofs of loss). Therefore, the Court looks elsewhere to determine what effect the amount listed by the insured on the proof of loss has on that person's claim and future ability to bring a lawsuit.

Drawing from principles that apply to standard insurance policies, as this Court is instructed to do, the Court finds that under certain circumstances it may be possible for an insured to strictly comply with the SFIP and yet still claim a higher amount of damages at trial than she claimed in her proof of loss. In fact, generally, "[t]he statements contained in a proof of loss as to the amount and circumstances of the loss, do not, as a matter of law, preclude the insured from proving and recovering the actual amount of his or her loss, or claiming the face amount of the policy." 13 Couch on Ins. § 197:14. This understanding is consistent with the terms of the SFIP, which states that the amount listed on a proof of loss should be the insured's "statement of the amount [she] is claiming under the policy signed and sworn . . ." 44 C.F.R. pt. 61, app. A(1), art. VII(J)(4). In formulating this statement, the SFIP instructs the insured to "use [her] own judgment concerning the amount of the loss . . ." 44 C.F.R. pt. 61, app. A(1), art. VII(J)(5). Therefore, if the insured provided an amount on the proof of loss that represented her honest belief regarding her claim, only to find out later that her figure was inaccurate or that she was mistaken, she may not be automatically precluded from recovering the additional amount. Nowhere in the SFIP does it say that the insured will be bound by the amount that she provides. In fact, given that the SFIP expressly requires the insured to "use [her] own judgment concerning the amount of loss," the policy should explicitly warn the insured if such judgment will be legally binding later if that is the intent of the insurer. 44 C.F.R. pt. 61, app. A(1), art. VII(J)(5).

This interpretation of the proof of loss requirement is also consistent with the purpose of

the requirement, which is to discourage fraud by having the insured swear to the loss claimed. Further, the information on the proof of loss form would still put the insurer on notice of the claim and allow the insurer to adequately investigate the claim. *See* 13 Couch on Ins. § 186:22 ("the purpose of the proof of loss is . . . to advise the insurer of facts surrounding the loss for which claim is being made, and to afford the insurer an adequate opportunity to investigate, to prevent fraud and imposition upon it, and to form an intelligent estimate of its rights and liabilities before it is obliged to pay.").

With that said, the present case does not involve a mistake on the proof of loss or later discovery of a previously unknown fact. Here, Rogers, through M&M, hired an independent adjuster who provided an estimate of $368,041.27. (Rec. Doc. 35-5 at 1). It is clear that she possessed this estimate on January 3, 2013, when she, through M&M, forwarded the estimate to Allstate. (Rec. Doc. 35-5). Despite having this estimate, Rogers later signed and swore to two proof of loss forms which stated that the net amount claimed under the policy was $91,389.05 total.[1] The insured now claims that the figures on her proof of loss forms were false representations. She says they did not accurately represent the amount that she was claiming under the policy, as the SFIP requires. Instead, the figures that Rogers provided on the proof of loss forms represented the uncontested portion of her claimed damages. Rogers swore to a reduced amount so that she could recover funds from Allstate more quickly. *See* (Rec. Doc. 35 at 3). Yet, it seems all along she intended to seek the higher amount that she provided to Allstate in her original estimate. If that was her intent, she should have put the higher amount on the proof of loss form. By not providing an accurate figure that represented her statement and

judgment regarding the amount of loss, Rogers failed to comply with the proof of loss requirement of the SFIP.

This result is even more compelling when one looks at the facts from Allstate's perspective.  Here, Allstate received a large estimate from Rogers's independent adjuster.  Later, Allstate received two reduced signed and sworn proofs of loss that allegedly represented the entirety of Rogers's clams.  After receiving these forms, Allstate wrote her checks for the entire amount that she claimed.  Allstate may have believed that Rogers changed her mind and agreed that the damages were lower than her adjuster's estimate.  Allstate likely believed that her case had been resolved.  It would be unfair to Allstate for this Court to allow Rogers to recover the undisputed amounts quickly, by misrepresenting her claims on the proof of loss, and now pursue litigation against Allstate in an attempt to recover additional amounts pursuant to her original estimate, which she had received before she submitted the proofs of loss.

## IV.     CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Allstate's Motion for Summary Judgment (Rec. Doc. 34) is hereby **GRANTED**.

New Orleans, Louisiana, this 17th day of July, 2014.

_____
UNITED STATES DISTRICT COURT JUDGE

---

[1] On Rogers's first proof of loss, she also claimed $4,831.22 under "supplemental claim", which represented the building replacement cost. (Rec. Doc. 34-6 at 2). Allstate included this amount in its payment to Rogers. Therefore, Rogers received $96,220.27 total from Allstate.